IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Donald Black, Marcia Black, Larry Martin, Rebecca Martin, Barbara Thompson, and James Thompson,<br><br>For themselves and a Class of Similarly Situated Plaintiffs,<br><br>     Plaintiffs,<br><br>vs.<br><br>Mantei & Associates, Ltd., Ricky Alan Mantei, Cindy Chiellini, Centaurus Financial, Inc., and J.P. Turner & Company, L.L.C,<br><br>     Defendants. | C/A NO. 3:23-cv-04149-MGL<br><br><br><br>**PLAINTIFFS' MOTION TO REMAND ON AN EXPEDITED BASIS AND FOR ATTORNEYS' FEES AND COSTS** |

Pursuant to 28 U.S.C. § 1447(c) and Local Rule 7.04, Plaintiffs Donald Black, Marcia Black, Larry Martin, Rebecca Martin, Barbara Thompson, and James Thompson, for themselves and a class of similarly situated Plaintiffs (collectively, Named Plaintiffs), file this motion and supporting memorandum requesting that this Court remand this case to the Court of Common Pleas for Lexington County, South Carolina, on an expedited basis, and for an award of Named Plaintiffs' attorneys' fees and costs.

### INTRODUCTION

This is the second time Defendants have removed this case to federal court on the premise that Named Plaintiffs seek recovery for "covered securities" under the Securities Litigation Uniform Standards Act of 1998 (SLUSA), Pub. L. 105-353, 112 Stat. 3227. Three years ago, this Court remanded the case to state court because Named Plaintiffs' First Amended Complaint explicitly excluded SLUSA covered securities. [Dkt. No. 1-3 at 226.] The Court rejected

1

Defendants' argument that a disagreement over whether a particular product is a covered security creates a federal question. [*Id.* at 227.] Those disagreements are instead committed to the state court, and SLUSA does not apply. [*Id.*] In direct, blatant, and egregious disregard of the Court's order, Defendants have now removed this case a second time—even in its final stages before consideration by South Carolina Circuit Court Judge McLeod of class certification—based on the existence of, Defendants say, such a disagreement and a gross misrepresentation of Plaintiffs' expert disclosure. This Court should remand Named Plaintiffs' case to state court and award Named Plaintiffs their attorneys' fees and costs for Defendants' bad faith successive removal.

## FACTUAL AND PROCEDURAL BACKGROUND

This action was brought to vindicate the rights of Named Plaintiffs and all similarly situated South Carolina investors to whom Defendants sold illiquid and ripoff products. Defendants advertised and sold illiquid investments to investors of advanced age, including Named Plaintiffs and the other class members, with false promises of high returns and guaranteed return of their principal investment within a short time following initial purchases. [Dkt. No. 1-3 at 252, ¶4.] Defendants sold these investments as part of a willful and malicious scheme to enrich themselves and advance their own interests in reckless disregard of and contrary to the rights and interests of, and any resulting damage to, the investors. [*Id*. at 253, ¶¶ 6-7.]

Named Plaintiffs filed the underlying action on June 28, 2019, in the Lexington County Circuit Court. Since the outset of this case, Named Plaintiffs intended to limit their claims in this matter to *only* those stemming from the sale of non-covered securities. To this end, Named Plaintiffs included the following language in Paragraph 5 of their original complaint:

> All of the Ripoff Products were debt securities exempt from registration pursuant to rules issued by the Securities and Exchange Commission under the Securities Act of 1933, were not issued by investment companies registered under or which have filed registration statements under the Investment Company Act of

1940, and/or otherwise did not qualify as "covered securities" for purposes of the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").

[*Id.* at 14, ¶5.] Their First Amended Complaint replaced this disclaimer with the following:

> Through this class action, the Named Plaintiffs only seek recovery for themselves and the Class Members for damages caused by products that do not qualify as "covered securities" for purposes of the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). The Named Plaintiffs hereby expressly exclude any Ripoff Products that otherwise meet the definition of a covered security from this action, and they reserve the right to seek recovery of damages related to covered securities through other action(s) in another forum.

[*Id.* at 253, ¶ 5.] It also added to the class definition additional language clarifying that the class only includes the purchase of "a debt instrument (including, but not limited to structured certificates of deposit, principal protected notes, and corporate medium-term notes) *that is not a 'covered security' under SLUSA*." [*Id.* at 271, ¶ 95 (emphasis added to identify new language).]

Defendants removed the original complaint to this Court on the sole ground that SLUSA allegedly applied to four investments which they incorrectly claimed fell within Named Plaintiffs' proposed class definition. [*See generally id.* at 69-77.] Named Plaintiffs timely moved to remand on the ground that these four investments were *not* part of this case to the extent they qualified as covered securities. [*See generally* Exhibit 1, Plaintiffs' Mot. to Remand and for Attorneys' Fees and Costs.][1] This Court denied Named Plaintiffs' original remand motion, interpreting Named Plaintiffs' attempt to exclude covered securities instead as a legal conclusion that the securities at issue are not covered. [Dkt. No. 1-5 at 196.] But on July 31, 2020, this Court granted Named Plaintiffs' Renewed Motion for Remand in light of the complaint amendments which "eliminate[] the possibility the suit will ever implicate a covered security." [Dkt. No. 1-3 at 226.] The Court

---

[1] Relevant filings from the first removal and the state court proceedings which Named Plaintiffs have not located within filings in this second removal are attached as exhibits. Named Plaintiffs will otherwise cite the docket number in this proceeding.

3

similarly rejected Defendants' argument that a federal court must decide which securities are covered and they "have a clear statutory right to have a federal court hear claims that implicate SLUSA" [Exhibit 2, Defs.' Joint Resp. in Opp. To Pltfs.' Renewed Mot. to Remand, at 22-23]:

> Importantly, a state court is "an equally competent body . . . to make the preclusion determination" under SLUSA. *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 645 (2006). Thus, the fact a court might need to make later preclusion determinations on individual products associated with the purportedly fraudulent acts is insufficient to create a federal question. Plaintiffs, thus, are correct; SLUSA no longer applies to the case.

[Dkt. No. 1-3 at 227].

Upon remand, Judge McLeod considered and denied Defendants' motion to dismiss, and discovery began in February 2021. As detailed in Named Plaintiffs' expert designations, discovery has confirmed Defendants engaged in pervasive fraudulent conduct that renders each Product transaction unlawful as a matter of law which are quintessential grounds for class certification, as Jonathan Heller, a 40-year veteran of the securities industry, made clear:

> **Conclusion**: There is no doubt, based upon the significant and irrefutable documentary evidence, that the Mantei team of brokers failed to meet their Reasonable Basis Suitability Obligation as it related to the sale of Structured Products at Centaurus, and therefore, ALL SALES of structured products were unsuitable ... regardless of customer specific suitability.

> Conclusions: When Mr. Mantei and his team were hired in May of 2015, they needed (by industry standards) to be placed on enhanced supervision until Centaurus could get a clear understanding of their sales practices given Mr. Mantei's employment history and his highly illiquid and unusual product mix. Instead, Centaurus chose to have Mr. Mantei supervise himself, something that has never been allowed in the industry for obvious reasons. All the brokers in Mr. Mantei's branch were paid a salary and discretionary bonus by Mr. Mantei with 100% of the commissions (at a 95% payout) going to Mr. Mantei. So every time a broker submitted an order to Mr. Mantei to approve, it was essentially for Mr. Mantei's client and Mr. Mantei's revenue. Mr. Mantei, of course, had an insurmountable conflict of interest. Nevertheless, there is no evidence that anyone actually ever supervised Mr. Mantei or his team of brokers as it relates to all Structured Product transactions. As a direct result, Mr. Mantei and his team were able to focus on generating commissions from structured products on an unfettered basis which was, from a suitability standpoint, never in their client's best interest. The end result was an egregious, categorical failure to supervise all the transactions in Mr. Mantei's branch. It is therefore my expert opinion that all transactions in the Mantei branch were unsuitable by industry standards.

[Dkt. No. 1-1 at 16, 28.] Mr. Heller further observed that "Mr. Mantei and his team's recommendations of structured products to clients [were made] without knowing or accurately

communicating the true risks and potential returns, pervasively failed to meet its reasonable basis for suitability obligation in violation of long-held industry standards, regulatory rules and court rulings. When the reasonable suitability obligation is not met, the recommendation becomes unsuitable for all investors, rendering customer specific suitability irrelevant."[*Id.* at 6.] Defendants' egregious conduct caused substantial damages—over $60 million just in the first day Named Plaintiffs and the class members owned the non-covered securities at issue, not to mention the extensive losses which mounted thereafter. [Dkt. No. 1-1 at 77-79.]

Named Plaintiffs' experts are not alone in reaching these conclusions. Since Named Plaintiffs filed this action, the Financial Industry Regulatory Authority, the Securities and Exchange Commission, and the South Carolina Securities Commissioner each found that Defendants engaged in fraudulent and unlawful activity with respect to the purchase and sale of these structured products. *See e.g.*, *Dep't of Enf't v. Mantei*, Complaint No. 2015045257501 (N.A.C. May 30, 2023); *Centaurus Fin. Inc.,* Securities Act Release No. 11153, Exchange Act Release No. 96805, Investment Advisors Act Release No. 6228 (S.E.C. Feb. 6, 2023); *Centaurus Fin. Inc.*, Matter No. 20191562 (S.C. Sec. Comm'r Feb. 6, 2023) (Consent Order).

Named Plaintiffs' discovery included requests for admission asking Defendants to admit or deny whether each product on a then-current list of structured products sold to Named Plaintiffs and the class members was a covered security. [Exhibit 3, Pltfs.' First Set of Requests for Admission to Defs.] The list of products in these requests included the 37 Barclays Bank PLC notes referenced in Defendants' Notice of Removal. [*Id.* at 6-9.] Defendants served identical responses which did not admit or deny anything but, as is relevant here, quoted, reinforced, and adopted this Court's holding that whether or not a product is covered is a question of law for the state court and not something they could admit or deny. [Exhibit 4, Def. J.P. Turner & Company,

5

LLC's Resp. to Pls.' First Set of Reqs. for Admis. to Defs., at 3; Exhibit 5, Defs. Mantei & Associates, Ricky Alan Mantei and Cindy Chiellini's Resp. to Pls.' First Set of Reqs. for Admis. to Defs., at 2; Exhibit 6, Defs.' Response to Pls.' First Set of Req. for Admis., at 3.]

Defendants' refusal to admit whether any product is covered or non-covered resulted in the record being silent on what products are covered or non-covered. Thus, Named Plaintiffs asked expert witness Craig McCann, Ph.D., another 40-year veteran of the securities industry who, among his many credentials, has been engaged on behalf of the Securities and Exchange Commission, to present the evidence in an easily digestible form for the state court to make that determination. Dr. McCann's preliminary report distinguished between covered securities, which are not at issue, and non-covered securities, which he termed the "Structured Notes at Issue." He broke down the products into seven categories to assist the court in its review:

### A. Covered securities.

33. Some of the structured notes sold by Defendants were issued by US companies with publicly traded common stock. I understand these notes are sometimes referred to as "covered" securities. In addition, the Defendants sold structured notes which were not equal to or senior to US publicly traded securities, i.e. Structured Notes at Issue. **Table 1** categorizes all the securities in the Trade Blotters by whether the issuer has publicly traded common stock in the US. The CUSIPs included in each category are listed in Appendix 2.

**Table 1 Securities in the Trade Blotters by Issuer Category**

| Category | No of CUSIPs | Purchase Cost |
|---|---|---|
| Issuer is a non-public bank/subsidiary | 126 | $563,901,672 |
| Issuer is non-US public company | 12 | $18,276,507 |
| Issued by subsidiary and guaranteed by unlisted parent company | 16 | $16,238,491 |
| Issued by subsidiary but guaranteed by US listed parent company | 23 | $49,043,718 |
| Issuer has US ADR | 50 | $50,488,417 |
| Issued by subsidiary but guaranteed by parent company that has US ADR | 22 | $25,086,881 |
| Issuer merged with its US listed parent company | 6 | $59,427,769 |
| **Issuer is not listed in the US Subtotal** | 255 | $782,463,455 |
| Issuer is listed in the US | 222 | $240,232,338 |
| **Grand Total** | 477 | $1,022,695,794 |

[Dkt. No. 1-1 at 67; *accord* 15 U.S.C. § 77r(b)(1) ("A security is a covered security of such security is—(A) a security designated as qualified for trading in the national market system pursuant to section 78k-1(a)(2) of this title that is listed, or authorized for listing, on a national securities exchange (or tier or segment thereof); or (B) a security of the same issuer that is equal in seniority or that is a senior security to a security described in subparagraph (A).").]

Dr. McCann expressly excluded 222 of the 477 structured products Defendants sold Named Plaintiffs and the class members because the products' issuer was listed on a U.S. stock exchange, rendering them covered securities. [Dkt. No. 1-1 at 67.] Dr. McCann then limited the remainder of his opinions—including each damages opinion cited by Defendants in their removal notice—to products which are not equal or senior to a US-listed security. [*Id.*] Such products would be non-covered securities. *See* 15 U.S.C. § 77r(b)(1). Defendants' removal is predicated on Dr. McCann's inclusion of products from just one issuer, Barclays Bank PLC, in the "Issuer has US ADR" category of investments that are not equal or senior to a US-listed security. [Dkt. 1 at 4-5; Dkt. No. 1-1 at 108.] Defendants have not identified any other product which they contend is a covered security included within Dr. McCann's damages analysis. This confirms that Dr. McCann successfully segregated covered securities from non-covered securities in his report.[2]

Although this Court need not determine whether the Barclays Bank PLC products are covered securities, there is ample basis for including them in the products at issue proffered to the state court for review. These products are not simply "preference shares," as Defendants call them

---

[2] Interestingly, it should be noted that Defendants' expert disclosures were due to be served on August 18, 2023, and the Defendants could have provided testimony challenging Dr. McCann's findings if they had valid, expert, and competent testimony to do so. However, without disclosing their purpose for making the request, Defendants' counsel asked Plaintiffs' counsel on August 8, 2023, for a courtesy extension of 14 days ostensibly for the purpose of having additional time to complete expert testimony on behalf of Defendants. Named Plaintiffs' counsel consented to the request for a 14-day extension of time; the improper removal action was filed on August 18, 2023.

here. [Dkt. No. 1 at 11.] They are American Depositary Shares (ADSs) which represent an interest in an American Depositary Receipt (ADR). [Dkt. No. 1-2 at 5 and 14 (Series 2 ADS); *id.* at 97 and 105 (Series 3 ADS); *id.* at 131 and 139 (Series 4 ADS); *id.* at 164 and 172 (Series 5 ADS).] "An ADR is a negotiable certificate that evidences an ownership interest in [ADSs] which, in turn, represent an interest in the shares of a non-U.S. company that have been deposited with a U.S. bank. It is similar to a stock certificate representing shares of stock." *Investor Bulletin: American Depositary Receipts*, SEC Office of Investor Education and Advocacy, https://www.sec.gov/investor/alerts/adr-bulletin.pdf (last visited Aug. 20, 2023). "ADRs are created by a depositary bank when the non-U.S. company, or an investor who already holds the underlying non-U.S. securities, delivers them to the bank or its custodian in the non-U.S. company's home country. The bank will issue ADRs to the investor in the U.S. and the investor will be able to re-sell the ADRs on a U.S. exchange or over-the-counter market." *Id.* Thus, the purchaser of an ADR on U.S. national exchange does not purchase shares of the foreign company. Instead, the purchaser acquires rights in a U.S. bank's interest in those shares in the form of an ADR. Named Plaintiffs have the right to argue that the Barclays Bank PLC notes are not "a security of the same issuer that is equal in seniority or that is a senior security to" an ADR and therefore are not covered securities.

Defendants removed this case a second time on August 18, 2023, based on their objectively false claim that Dr. McCann's inclusion of the Barclays Bank PLC notes as "Structured Notes at Issue" "clarifies the [First Amended Complaint], and makes a claim for damages based on 'covered securities' for the first time since the [First Amended Complaint]." [Dkt. No. 1 at 9.] Given the specious nature of Defendants' second removal which seeks to wrest this case away from Judge McLeod on the verge of class certification, Named Plaintiffs promptly filed this motion to remand,

request consideration on an expedited basis, and seek an award for attorneys' fees and costs due to the demonstrable bad faith second removal by Defendants.

## STANDARD OF REVIEW

When defendants seek to invoke the jurisdiction of the federal court by removal pursuant to 28 U.S.C. § 1441(a), "[t]he burden of establishing federal jurisdiction is placed upon the party seeking removal." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). Federal courts are "obliged to construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated." *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (en banc) (quoting *Mulcahey*, 29 F.3d at 151). "Therefore, '[i]f federal jurisdiction is doubtful, a remand [to state court] is necessary.'" *Id.* (quoting *Mulcahey*, 29 F.3d at 151). "It is precisely because cases should not be permitted to bounce back and forth between state and federal courts (among other reasons), with the attendant uncertainty and manifest waste of judicial resources such procedural dalliances entail, that courts strictly interpret the removal statutes." *E.g. Gordon Grocery, Inc. v. Associated Wholesales, Inc.*, No. AMD 07-820, 2007 WL 1266802, at *2 (D. Md. April 30, 2007).

Removal based upon federal question must be made within 30 days of the initial pleading or, as is relevant here, "after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(1), -(3). "Successive removal is permitted when there is a relevant change in circumstances, when subsequent pleadings or events reveal new or different grounds for removal." *Glover v. Williams*, No. 3:21-cv-00679-JMC, 2021 WL 4227545, at *2 (D.S.C. Sept. 16, 2021). Removing a case based upon changed circumstances "is not an easy one for defendants to travel." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744,

760 (11th Cir. 2010). Any "other paper" justifying removal "must contain an unambiguous statement that clearly establishes federal jurisdiction." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1213 n. 63 (11th Cir. 2007). Furthermore, the changed circumstance must result from the voluntary action of the plaintiff. *Pretka*, 608 F.3d at 761. "A defendant cannot show that a previously non-removable case 'has become removable' as a result of a document created by the defendant." *Id.*; *cf. S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996) (holding that an affidavit executed by a defendant's attorney is not an "other paper" under § 1446(b)).

## LAW/ANALYSIS

**I.      Circumstances Have Not Changed Because Defendants' Removal Is Based on the Same Argument this Court Previously Rejected.**

Defendants' removal is premised on the parties' disagreement as to whether the Barclays Bank PLC structured notes are covered securities under SLUSA. Named Plaintiffs' expert says they are not covered; Defendants' in-house counsel say they are. This Court held over three years ago that the state court will resolve that disagreement. [Dkt. No. 1-3 at 227.] That a court must make this determination "is insufficient to create a federal question," and Named Plaintiffs therefore "are correct" that "SLUSA no longer applies to this case." [*Id.*] Defendants therefore have not stated a federal question for removal.

Named Plaintiffs' First Amended Complaint, which remains the operative pleading in this case, "explicitly excludes all covered securities." [*Id.* at 226.] "[I]f a product is a covered security, it is automatically excluded from the lawsuit completely." [*Id.*] Nothing has changed; Named Plaintiffs still are not seeking to recover losses caused by covered securities. Furthermore, Named Plaintiffs' experts did not "clearly[] assert claims for damages for covered securities," as Defendants claim. [Dkt. No. 1 at 8.] Dr. McCann expressly limited his opinions to products which are *not* covered securities. [Dkt. No. 1-1 at 67.] Mr. Heller's expert report, which detailed

10

Defendants' class-wide gross misconduct, did not expand the scope of products subject to this case in any way. Defendants cannot identify a change in circumstances because Dr. McCann's opinion precisely tracks the First Amended Complaint's exclusion of covered securities.

Defendants simply disagree with Named Plaintiffs about which products are covered and which ones are not. But here too, nothing has changed. This Court unequivocally held that the state court can determine which products are covered and which are not, and this question does not create federal question jurisdiction. [Dkt. No. 1-3 at 226.] Defendants said the exact same thing when responding to Plaintiff's requests for admission. [Ex. 4, J.P. Turner RFA Resp., at 3, Ex. 5, Mantei Defs.' RFA Resp., at 2; Ex. 6, Centaurus RFA Resp., at 3.] Named Plaintiffs did just as this Court and Defendants required by compiling evidence by offering expert testimony to help the state court make this determination with respect to the 477 structured products Defendant sold. If Defendants believe Dr. McCann improperly classified certain products as non-covered, then they may challenge that opinion before the state court just as this Court ordered them to do. And if Defendants prevail as to those products, the products will be excluded from the class.

Through this removal, Defendants seek to deprive the state court of its rightful jurisdiction and deprive Named Plaintiffs of their lawfully chosen forum. They also seek to deprive Named Plaintiffs of the opportunity to even take a position on whether a product is covered or not. Defendants falsely equate an argument that a secretly disputed product is not covered into an allegation that Named Plaintiffs are seeking damages for covered securities. It is a "heads I win, tails you lose" scenario; Named Plaintiffs either must abandon any products where a dispute might exist or be subject to removal under SLUSA and ultimately dismissal of this entire action. This is the opposite of how the Court ordered the case to proceed because such questions do not implicate SLUSA, do not present a federal question, and are committed solely to the state court's jurisdiction.

Defendants' actions amount to a bad faith game of "gotcha," whereby they refuse to admit whether any product is covered because that is a question of law for the state court, require the state court to make that determination with respect to all 477 structured products they sold to Named Plaintiffs and the class members, and then spring removal under Defendants' intentionally withheld subjective opinion that Named Plaintiffs are wrong with respect to just one issuer's products. It cannot be emphasized enough that this Court's order explicitly prevented Defendants from contorting any disagreement as to whether a product is covered into a federal question. Defendants acted in direct contravention of this Court's clear mandate—which is compelled by binding U.S. Supreme Court precedent—and done just that in a meritless attempt to railroad this case as it nears a decision point on class certification.

Named Plaintiffs therefore move this Court to enforce its original order and remand this action to the Court of Common Pleas in Lexington County.

## II. Defendants Grossly Misrepresent Dr. McCann's Report to Mask the Fact that Removal is Improperly Based on Their Own Attorneys' Declaration.

Defendants framed removal as premised on statements made by Named Plaintiffs' experts which allegedly "assert[] claims for damages for covered securities." [Dkt. No. 1 at 7.] As explained above, this is objectively false. Dr. McCann's report expressly *excluded* covered securities from his analysis. [Dkt. No. 1-1 at 67.] Defendants' removal in actuality is premised on a declaration from an in-house lawyer with Centaurus which suggests that the Barclays Bank PLC structured notes which Dr. McCann's preliminary report categorizes as non-covered are, in fact, covered securities. [Dkt. No. 1 at 10-11; *see generally* Dkt. No. 1-2 (Decl. of Bryan A. Gless).] Because the declaration did not originate from, and is not a voluntary act of, Named Plaintiffs, it is not an "other paper" which can support removal. *Pretka*, 608 F.3d at 761; *S.W.S. Erectors, Inc.*, 72 F.3d at 494. Defendants therefore failed to meet their burden for removal.

12

**III.     Defendants' Removal is Untimely Under Their Frivolous Theory of Jurisdiction.**

If this Court accepts Defendants' argument that any representation that products which Defendants believe are covered securities are included within this case, even if the state court will resolve that question, triggers removability, then Defendants' removal is untimely as the first assertion to that effect occurred months ago.

On May 3, 2023, Defendants deposed Plaintiff Donald Black. They tendered to him the requests for admission discussed above which identify hundreds of products, including the 37 Barclays Banks PLC notes that are the subject of Defendants' removal. [Exhibit 7, Dep. of Donald Black, at 34:06-35:08.] Counsel for Centaurus, the defendant which filed and signed the notice of removal, asked Mr. Black if it is his "intention to pursue damages on behalf of the class for the investments listed" in the requests. [*Id.* at 35:10-12.] Mr. Black simply responded, "Yes." [*Id.* at 35:13.] Of course, Named Plaintiffs do not seek to seek recovery for covered securities; this Court correctly held three years ago that the First Amended Complaint "automatically exclude[s] [covered securities] from the lawsuit completely." [Dkt. No. 1-3 at 226.] Defendants' failure to remove the case following Mr. Black's testimony confirms they understand that a disagreement about which products are included is not grounds for removal. But if it is sufficient to support removal, as Defendants now contend, Defendants were obligated to remove within 30 days of Mr. Blacks's testimony, which would have been by June 2. *See Shorraw v. Bell*, No. 4:15-cv-03998-JMC, 2016 WL 3586675, at *3 (D.S.C. July 5, 2016) (holding depositions are an "other paper" which may trigger the 30-day removal period). Because they did not remove by that date, their removal is untimely. This Court must remand.

**IV.     This Motion Warrants Expedited Treatment and an Immediate Remand.**

Unwarranted removals should be met with a "a swift and nonreviewable remand order." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 77 (1996). Congress "call[ed] for expeditious superintendence by district courts" when faced with motions to remand, *id.* at 76, "to suppress further prolongation of the controversy by whatever process," *In re Lowe*, 102 F.3d 731, 734–35 (4th Cir. 1996) (quoting *In re Pennsylvania Co.*, 137 U.S. 451, 454 (1890)). It is thus within a district court's discretion to expedite motions to remand in furtherance of the same policy behind remand motions' nonreviewability rule: the "policy of not permitting interruption of the litigation of the merits of a removed cause by prolonged litigation of questions of jurisdiction of the district court to which the cause is removed." *Id.* (quoting *United States v. Rice*, 327 U.S. 742, 751 (1946)); *see also South Carolina v. Boehringer Ingelheim Roxane, Inc.*, No. 3:07 CV 00665 CMC, 2007 WL 1232156, at *2 (D.S.C. Apr. 26, 2007) (granting a motion to expedite the remand decision in part by requiring expedited briefing and the timing of the order when the materials submitted by the parties included four decisions from four different district courts addressing motions to remand in actions very similar to the one before the court).

Defendants' have improperly invoked this Court's authority by removing on a basis which this Court already rejected to the detriment of Named Plaintiffs' right to have their case timely adjudicated in the forum of their choosing—the Court of Common Pleas for Lexington County, South Carolina. This case has made significant progress in state court since this case was remanded three years ago, with Defendants' removal coming in the home stretch before the state court's class certification determination. [Exhibit 8, 4th Am. Scheduling Order, at 1-2.] Any delay in remanding this case would thus reward Defendants' dilatory tactics and abuse of the judicial process.

Therefore, given the upcoming deadlines in the state court scheduling order, and the parties already seized-upon opportunity to thoroughly brief this Court on the exact issue raised in this second removal, Named Plaintiffs respectfully request this Court shorten Defendants' time to file any opposition to one week, shorten Named Plaintiffs' time to file any reply thereto to three days or any similar time proportional to the time for Defendants to respond, and expedite consideration of this motion after briefing.

### V. This Court should award Named Plaintiffs their attorneys' fees and costs incurred in bringing this motion.

"An order remanding the case may require payment of just costs and any actual expenses, including attorneys' fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Supreme Court recognized that the power to award attorneys' fees and costs exists, in substantial part, because "[t]he process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 140 (2005). These awards are needed to "reduce[] the attractiveness of removal as a method for delaying litigation and imposing costs upon the plaintiff." *Id.*; *see also McPhatter v. Sweitzer*, 401 F. Supp. 2d 468, 479 (M.D.N.C. 2005) (determining that the costs and expenses incurred as a result of an untimely second removal invoking SLUSA, which was substantially similar to the first, "should be borne by Defendants" because "they have forced Plaintiffs to come to federal court for a second time, which has complicated, delayed and increased the cost of their state court action"). Fees and costs therefore are to be awarded "where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* at 141. Such an award is appropriate where a "cursory glance" at the record would reveal the lack of federal jurisdiction. *Beaufort Cnty. School Dist. v. United Nat'l Ins. Co.*, 519 F. Supp. 2d 609, 618 (D.S.C. 2007); *see also Watson v. Charleston Hous. Auth.*, 83 F. Supp. 2d 709,

712 (S.D. W. Va. 2000) (awarding attorneys' fees and costs where "it was clear from the Plaintiff's complaint that he alleged no federal cause of action").

Defendants could not have formed an objectively reasonable belief that removal was proper. Dr. McCann's report on its face clearly did not assert claims for damages for covered securities. Defendants' removal is based solely on their disagreement as to which products are not covered securities and therefore within Named Plaintiffs' proposed class and based on evidence supplied by Centaurus's in-house counsel. In remanding this case the first time, this Court unequivocally held that such a disagreement does not raise a federal question and SLUSA does not apply. [Dkt. No. 1-3 at 227.] Defendants blatantly disregarded this Court's order in removing this case a second time in the homestretch before class certification. They cannot have an objectively reasonable belief to assert that Dr. McCann asserted damages for covered securities when his report explicitly said just the opposite. And it is axiomatic that Defendants' own declaration is not a voluntary act by Named Plaintiffs' which can support removal.

Over the last three years, Named Plaintiffs have uncovered substantial evidence of Defendants' wrongdoing which caused immense harm to South Carolina citizens. [*See generally* Dkt. No. 1-1.] There are ample bases for this case to be certified as a class. Sensing what is coming, Defendants feebly attempt to bring this case back to federal court under SLUSA, hoping ultimately to avoid class action accountability for their egregious conduct that harmed thousands of South Carolinians. Their removal is a bad faith "Hail Mary" to sideline Named Plaintiffs' prosecution of their case. Removal was not, and could not have been, based on an objectively reasonable belief that federal jurisdiction exists. The only objective view is that Defendants disregarded the clear language of Dr. McCann's report and this Court's order, decided to engage this Court's time and resources needlessly, and did so for the obvious purposes of delay and

increasing expense to Named Plaintiffs. Defendants' actions are the very "bounc[ing] back and forth between state and federal courts (among other reasons), with the attendant uncertainty and manifest waste of judicial resources such procedural dalliances entail" which courts abhor and must guard against. *Gordon Grocery, Inc.*, 2007 WL 1266802, at *2. The surefire way to deter such misconduct is enforce § 1447(c)'s power to award attorneys' fees and costs.

This Court therefore should order Defendants to pay Named Plaintiffs' attorneys' fees and costs incurred in connection with obtaining this remand. Named Plaintiffs respectfully request that the Court find that their attorneys' fees and costs should be reimbursed and grant them fifteen days within which to submit appropriate evidence and briefing on the amount of those fees and costs. *See Watson*, 83 F. Supp. 2d at 711 (holding courts retain jurisdiction after remand to award fees and costs).

## CONCLUSION

For the foregoing reasons, Named Plaintiffs respectfully request that this Court immediately remand this case to the Circuit Court for Lexington County, South Carolina, award Named Plaintiffs their attorneys' fees and costs in bringing this motion, retain jurisdiction solely to determine an appropriate amount of attorneys' fees and costs to award, and grant such other relief as this Court deems just and proper.


[Signature page follows]

Respectfully submitted,

**WILLOUGHBY HUMPHREY & D'ANTONI, P.A.**

*s/R. Walker Humphrey, II*
R. Walker Humphrey, II, Fed. Bar No. 12524
133 River Landing Drive, Suite 200
Charleston, SC 29492
(843) 619-4426
whumphrey@willoughbyhoefer.com

Mitchell Willoughby, Fed. Bar No. 4702
Elizabeth Zeck, Fed. Bar No. 6627
930 Richland Street (29201)
Post Office Box 8416
Columbia, SC 29202-8416
(803) 252-3300
mwilloughby@willoughbyhoefer.com
ezeck@willoughbyhoefer.com

*Attorneys for Plaintiffs*

August 22, 2023
Charleston, South Carolina